Michael W. Prozan, CSB # 124893
My General Counsel Group
851 N. San Mateo Drive, Suite C
San Mateo, CA 94401
Tel:  650 348-1500
Fax: 650 348-1543
Email:  mike@mgcgroup.com

*Attorney for Defendants Verismart, Inc., Phillip Thoren, Jim Garvey, Andy Thoren and Joe Dawson*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Fletcher Carson | **Case No. CV 11 3766 LB** |
| Plaintiff, | **MOTION TO DISMISS COMPLAINT AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |
| vs. | **HEARING DATE:  February 16, 2012** |
| Versimart Software, Inc. Phillip Thoren; James Garvey; Carl Raff; Joe Dawson; and Andy Thoren | **HEARING TIME: 11:00 AM** |
| | **COURTROOM:    4** |
| | **Judge:  Hon. Laurel Beeler** |
| Defendants | |

## MOTION

Now come Defendants Verismart Software, Inc., Phillip Thoren, James Garvey, Andy Thoren and Joe Dawson, by and through their attorney Michael W. Prozan, to move this Court to dismiss the Complaint in this matter.

1    This motion is based on FRCP Rule 12(b)6, the Notice of Motion, this Motion, the

2    Memorandum of Points and Authorities in Support of this Motion, the Request for Judicial

3    Notice, the Declaration of Michael W. Prozan and such additional evidence, arguments, and

4    authority as may be presented in any subsequent brief or at the hearing on this matter.

5                                      Respectfully submitted this 5th day of January, 2012

6

7

8                                                        /s/ Michael W. Prozan
                                                         Michael W. Prozan
9                                                        *Counsel to Verismart Software,*
                                                         *Inc., Phillip Thoren, James*
                                                         *Garvey, Andy Thoren and Joe*
10                                                       *Dawson*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
-2-
                                          MOTION TO DISMISS
                              POINTS AND AUTHORITIES IN SUPPORT THEREOF

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

## I.  INTRODUCTION

This memorandum supports the motion to dismiss the First Amended Complaint ("<u>FAC</u>") for failure to state a cause of action of Defendants Verismart Software, Inc. ("<u>VSI</u>"), Phillip Thoren (referred to hereafter individually as Phillip to avoid confusion with Andy Thoren), James Garvey, Andy Thoren (referred to hereafter individually as Andy to avoid confusion with Phillip Thoren) and Joe Dawson (collectively with the other moving Defendants, the "<u>Moving Defendants</u>").  This action is the fourth served action on one or more of the Moving Defendants by Fletcher Carlson since March, 2011.  For the reasons set forth below, not only does Plaintiff fail to state a cause of action, but he pleads himself into a corner from which he cannot escape and will never be able to plead a cause of action for copyright infringement.

## II.  FACTS

### A. GENERAL BACKGROUND

Plaintiff provides a brief overview of the situation to put the FAC in context.  Plaintiff worked together with Moving Defendant Phillip Thoren and Carl Raff from as far back as 2004 with others joining the group along the way.  Originally, the three worked through an entity called Omsphere LLC ("<u>OLLC</u>") of which Plaintiff claims here and in other lawsuits to be the sole owner.  He also claims that Phillip and Carl Raff had non disclosure agreements with OLCC.  The current business was originally conducted through a Nevada corporation which was "reincorporated" as California corporation, Verismart Software, Inc. ("<u>VSI</u>").  Plaintiff asserts a high ownership percentage of VSI.  Defendant Garvey signed on in November, 2010 to assist in securing funding and moving VSI forward.  When Garvey further investigated VSI, he found irregularities in securities transactions which involved Plaintiff and brought those transactions to

the attention of the Plaintiff and Defendants Phillip and Raff.  Following that revelation, Plaintiff took an adversarial approach.  First he sued some or all of these Defendants to this action for violation of a software license agreement between OLCC and VSI.  Marin County Superior Court Case 1101611.  After failing to secure a temporary restraining order in that matter, he sued them for misappropriation of trade secrets, again failing to secure a temporary restraining order.  Marin County Superior Court 1102199.  Thereafter, Plaintiff filed this action.  And, after that, Plaintiff filed an action in Santa Clara County Superior Court to compel a shareholders meeting.  And, after that, he filed an action against Carl Raff alleging conversion in Marin County Superior Court for which Moving Defendants understand that he is again seeking a temporary restraining order.

## B.  COMPLAINT OVERVIEW

The instant complaint claims copyright infringement with regard to three pieces of software, "CognitiveLogic," vContent, subsequently renamed CognitiveContent (to minimize confusion, Moving Defendants refer to the CognitiveContent software by its original name, vContent) and vSim.  Plaintiff claims to be the sole author of CognitiveLogic, to have acquired vContent from the copyright holder, and to have acquired vSim from OLLC.

## C.  COGNITIVELOGIC ALLEGATIONS

With regard to his copyright infringement claims regarding CognitiveLogic, Plaintiff asserts the following in the FAC relevant to this motion.  Plaintiff was "the SOLE (emphasis in original) designer, programmer, tester, and deployer of code over the last several years (referred to as CognitiveLogic)." FAC P3¶8.

In Appendix B1 to the original complaint and Appendix A to the FAC (identical exhibits), Plaintiff claims three and only three categories of software (same Exhibit, attached as Exhibit A hereto). Category 1 is vContent purchased from the "owner/vendor. Category 2 is alleged to be trade secret software covered by Marin County Action CIV 1102199 and Category 3 is software alleged to be licensed to VSI and covered by Marin County Action CIV 1101611.

In connection with CognitiveLogic, at some unknown point, he notified VSI "that they were no longer allowed to use the CognitiveLogic copyrighted intellectual property and trade secrets. . ." FAC P4L3-4. He asserts a variety of wrongs particularly, that the Defendants refused to stop "using" CongnitiveLogic; that they continue to host, use and offer for sale products which "require" CognitiveLogic; and that they are attempting to study and reverse engineer CognitiveLogic. See FAC P4L8-14; 19-25. He asserts that VSI is the alter ego of Phillip and Garvey. See FAC P4L8. Outlining the ownership structure of all relevant software, Plaintiff attaches Appendix A which notes three categories appearing to cover all ownership. See Appendix A to complaint. Nowhere does that Appendix purport to mention copyrighted software written by the Plaintiff.

In relevant part, Plaintiff filed an undated Declaration of Esmond Pitt with the Complaint which Plaintiff does not reference in the FAC (the Pitt Decl). See RJN and Declaration of Michael W. Prozan (Prozan Decl) Exhibit A.

According the Pitt Declaration, Mr. Pitt began working with Defendant VSI as its Vice President of Engineering in 2007. Pitt Decl ¶1.c. He admits he had an agreement with VSI for it to use his software which he claims VSI breached, in spite of receiving stock options. Pitt Decl ¶1.d. He acknowledges that he did not start coding the software at issue (vContent) until 2009,

while he was Vice President of VSI. Pitt Decl ¶2.a.  He admits that only *after* he voluntarily installed the software at VSI for "evaluation and use for a considerable period" that he asked the "management" (of whom he is one) for additional options in "return" for the intellectual property of vContent.  He admits that the parties agreed on the number of options to be issued.  Pitt Decl ¶2.c. Pitt claims that the offers were subject to acceptance by him in the form of execution of the corresponding agreements.  Pitt Decl ¶2.d.  Pitt cites no instance of ever trying to stop VSI from using the vContent software during his alleged ownership period.  As evidence of this agreement, Pitt attaches Appendices E-1 and E-2 to his declaration which appear to be the first pages of option agreements provided to him.

He admits that the only reason that he did not execute the documents evidencing the agreed upon consideration was his after the fact judgment that the options were worthless.  Pitt Decl ¶2.g.  He submits two exhibits claiming to be assertion of his ownership interest.  The first, Appendix C to his declaration, purports to be a heavily redacted skype instant messaging session on March 24, 2011, *after* he claimed the matter had not been consummated.  The first part of it appears to be Pitt *agreeing* to accept stock or options.  In particular, it reads:

Pitt:  The April, 2007 one like what I already signed with the Nevada corp?

Phillip:  So . .  we create one for the second block of shares

Pitt: redacted

Phillip:  I think we should try to match the second block in the cap table to the Dec 2010 timeline . . . do you agree??

Pitt:  Of course.

In the second part of Appendix C to the Pitt Decl, the parties appear to be discussing something commercial, but the conversation is too vague and redacted to confirm what they are talking about.  In the Appendix D to the Pitt Decl, the only thing that is clear about vContent, is Defendant Thoren's position that OLLC does not have any ownership claim to vContent.

The Pitt Declaration indicates a transfer of ownership of vContent.

The FAC makes allegations of misuse similar to those regarding CognitiveLogic.  FAC P5L14-15; 17-24.

### D.  vSim Allegations

Plaintiff asserts that VSI licensed vSim from OLLC (Appendix G to the FAC the "SLA") and that the rights to enforce the agreement were assigned to him personally. FAC P6L23-26.  In a related complaint, Plaintiff admits that this assignment occurred only one month after OLLC and VSI entered into the license.  See Third Amended Complaint in Marin County Superior Court Action 1101611 RJN and Prozan Decl Exhibit B P2L18-22 and Exhibit 5 thereto.  Plaintiff asserts breach of that license and subsequent termination.  FAC P7L2-5 He also asserts that Defendants continue to "market" the software.  FAC P7L8.  He makes the similar allegations misuse that he makes regarding CognitiveLogic and vContent. FAC P7L12-15;19-25.

In addition to being royalty free (see SLA Section 1.1), the SLA purports to provide for a "License Fee" of 5% of gross revenues, (Section 3.1); a minimum annual "License Fee"; a cap on the "License Fee" (a "Transfer Fee") (Section 3.2); and the right to compel payment of the "Transfer Fee" in the event of termination.

The SLA provides that upon termination Licensor may compel payment of the unpaid balance of the Transfer Fee and that the exclusivity provisions of the SLA terminate, leaving the Licensor and VSI free to use the software.  See SLA Sections 7.4 and 7.5.

Section 8.6 of the SLA provides for limited assignment rights, stating in particular:

> If, at any time, the Company is unable or incapable of performing its duties for any reason whatsoever to exercise contracts or otherwise enforce its intellectual property rights, this agreement shall be transferred to the ownership of Fletcher Carson . . .

According to the Third Amended and Restated Complaint in Marin County Superior Court Case 1101611, Plaintiff executed an Assignment Agreement, "as a simplification of the administration of the SLA, since Plaintiff owned both companies in their entirety."  RJN and Prozan Decl Exihibit B, Breach of Contract Cause of Action, P2L21-2.  Plaintiff attached the assignment, dated June, 2006, as Exhibit B to the 1101611 complaint.

Plaintiff asserts that VSI breached the contract regarding vSim and that he terminated that agreement, demanding that VSI stop using vSim.

### III.LAW

A motion under FRCP 12(b)6 tests the legal sufficiency of the complaint.  See *De La Cruz v. Tormey (9th Cir. 1978) 582 F.2d 45*.  It must meet the pleading standards set forth in *FRCP 8*. The factual allegations must be enough "to raise a right of relief above the speculative level . . . it must state enough facts to state a claim for relief that is plausible on its face."  *Bell Atlantic Corp v. Twombly (2007) 550 US 544, 127 S.Ct. 1955*.  One court pointed out that this case among others "teaches that a defendant should not be forced to undergo costly discovery unless the

complaint contains enough detail . . . indicate that the plaintiff has a substantial case." *Bissessure v. Indiana Univ. Bd of Trustees (7th Cir. 2009) 581 F3d 599, 603*.

The Court must "accept as true all factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google, Inc. (2nd Cir. 2009) 562 F3d. 123*. Conclusory allegations are to be disregarded. *Ashcroft v. Iqbal 556 U.S. 662, 129 S.Ct. 1937 (2009)*.

In addition to the complaint, the Court considers the attachments thereto. In fact, "when a written instrument contradicts the allegations in a complaint to which it is attached, the exhibit trumps the allegations." *Thompson v. Illinois Dept of Prof Reg. (7th Cir. 2002) 300 F3d 750, 754*. Further, matters subject to judicial notice can also be considered. See *MGIC Indem. Corp. v. Weisman (9th Cir 1986) 803 F2d 500, 504*.

## IV. ARGUMENT

**A. BECAUSE OF HIS INCONSISENT PLEADINGS, PLAINTIFF CAN NEVER ESTABLISH A VIOLATION OF COPYRIGHT LAW BY DEFENDANTS AS TO COGNITIVELOGIC.**

### 1. PLAINTIFF PLEADS THAT DEFENDANTS LACK POSSESSION OF COGNITIVELOGIC AND, THEREFORE, CANNOT BE INFRINGING HIS COPYRIGHT.

Plaintiff pleads that Defendants lack possession of CognitiveLogic. Plaintiff asserts that:

Plaintiff was the sole designer, programmer, tester, and deployer of code over the last several years (referred to as cognitive logic) . . . Plaintiff left the company, taking full possession of all code authored by Plaintiff. FAC P3¶8.

---

MOTION TO DISMISS
POINTS AND AUTHORITIES IN SUPPORT THEREOF

Accordingly, because Plaintiff pleads that he took possession of *all* code authored by Plaintiff, he can never establish that Defendants violated any copyright statute *after* he took the code. It is physically impossible for Defendants to infringe upon copyrighted material which they do not possess.

### 2. PLAINTIFF ADMITS THAT HIS CLAIM DOES NOT FALL WITHIN THE OWNERSHIP STRUCTURE OF THE SOFTWARE

Plaintiff filed the same exhibit twice offering a complete description of his software ownership claims. He filed it first in the original complaint and then in the FAC. It includes three and only three categories of claims: The vContent software for which he claims copyright infringement; the licensed software for which he claims license protection; and finally, trade secret software for which he claims trade secret protection. Other than the vContent, he claims no other software covered by copyright in his exhibits, thus admitting that his CognitiveLogic software does not qualify for a copyright claim, not withstanding his new claim in the FAC.

### 3. PLAINTIFF DOES NOT PLEAD AND BECAUSE OF CLAIMS IN THE FAC CAN NEVER PLEAD THAT VSI COPIED THE COGNITIVELOGIC SOFTWARE.

An essential element of a copyright violation is that the Defendant(s) copied the alleged material. See *Three Boys Music Corporation v. Bolton et al. 277 F.3d 477 (2000)*. Here, Plaintiff, through his own pleadings, concedes that he can never establish this element. Plaintiff admits that he was the "SOLE designer, programmer, tester, and deployer of code over the last several years (referred to as CognitiveLogic). As the SOLE (emphasis in original) coder and deployer, *Plaintiff* claims that no other party placed the code on the servers and thus that no other party copied the code.

1

2

3

**4.   PLAINTIFF FAILS TO PLEAD AND CAN NEVER PLEAD THAT DEFENDANTS EVER VIOLATED THE RIGHTS PROTECTED BY FEDERAL COPYRIGHT LAW WITH RESPECT TO COGNITIVELOGIC AND ACTUALLY ALLEGES USES NOT PROHIBITED BY FEDERAL COPYRIGHT LAW.**

4

5

Plaintiff fails to plead and can never plead that Defendants ever violated the rights protected by Federal Copyright law with respect to CognitiveLogic.

6

7

8

Federal copyright law provides only limited protection for a copyrighted work, in particular, it provides protection the holder the following exclusive rights, described in summary form:

9

1.   the right to copy;

10

2.   the right to prepare derivative works;

11

12

3.   the right to distribute copyrighted works;

13

14

4.   the right to display publicly a copyrighted work whether in visual or audio form.  See 17 U.S.C §106; *Kalantari v. NITV, Inc. 352 F3d 1202, 1207-08 (9th Cir. 2003).*

15

16

17

18

19

20

21

Here the Plaintiff claims that he was the sole deployer of the Cognitivelogic code which forecloses him from claiming that any other party copied the code onto any applicable server. He claims to be the sole coder of the CognitiveLogic code so that he can never claim that another party made derivative works from that code.  He does not claim that any party distributed the code.  As discussed below, he will never be able to claim this because VSI gets no value from and has no need to distribute CognitiveLogic to third parties.

22

23

24

25

-11-

MOTION TO DISMISS
POINTS AND AUTHORITIES IN SUPPORT THEREOF

In fact, Plaintiff alleges uses of the copyrighted material which do not violate federal copyright laws, in particular he says that Defendants "host, use, and offer for sale, products and services which require the infringed software." He also asserts that Moving Defendants are attempting to re-engineer, re architect, and re invent CognitiveLogic, among other software.

Copyright law does not prohibit hosting copyrighted code. It does not prohibit using the code. It does not offer for sale products or services which "require" CognitiveLogic.

With regard to the assertion that the products or services "require" CongitiveLogic, the assertion of the Plaintiff is vague. Plaintiff fails to plead that in reality, the copyrighted material does nothing more than work with and process data on at a host location (where Plaintiff installed it at VSI) where data is then transmitted over the internet. The software itself is *not* copied, is *not* distributed and does *not* travel over the internet to other sites.

Finally, copyright law does not protect against re inventing the Plaintiff's work. It only protects against copying, creating derivative works from, and distributing CognitiveLogic. Defendants are free to study CognitiveLogic and develop their own code performing similar functions without violating federal copyright law.

**B. PLAINTIFF CAN NEVER ESTABLISH A VIOLATION OF COPYRIGHT LAW BY DEFENDANTS AS TO VCONTENT.**

**1. PLAINTIFF FAILS TO PLEAD AND CAN NEVER PLEAD THAT DEFENDANTS EVER VIOLATED THE RIGHTS PROTECTED BY FEDERAL COPYRIGHT LAW WITH RESPECT TO VCONTENT.**

Plaintiff fails to plead and can never plead that Defendants ever violated the rights protected by Federal Copyright law.

Federal copyright law provides only limited protection for a copyrighted work, in particular, it provides protection for the holder the following exclusive rights, described in summary form:

1.      the right to copy;

2.      the right to prepare derivative works;

3.      the right to distribute copyrighted works;

4.      the right to display publicly a copyrighted work whether in visual or audio form.  See 17 U.S.C §106; *Kalantari v. NITV, Inc. 352 F3d 1202, 1207-08 (9th Cir. 2003)*.

Here Pitt claims that the sole copy of vContent was deployed to Defendant VSI with his consent and not in violation of his rights as the then owner.  See Pitt Decl ¶2.c.  Further, at no time does Pitt ever assert that he ever indicated any issues with the use of vContent in violation of any right he might have during his entire alleged ownership of vContent.

Plaintiff alleges uses of the copyrighted material which do not violate federal copyright laws, in particular he says that Defendants "host, use, and offer for sale, products and services which require the infringed software."  Unfortunately for Plaintiff, hosting and using vContent does not violate federal copyright law.  See 17 U.S.C §106.

With regard to the assertion that the products or services "require" vContent, the assertion of the Plaintiff is vague and sidesteps what the parties know but the court does not: the core functionality of vContent works with and processes data on at a host location (where it was installed with the consent of the owner) which data is then transmitted over the internet.  The software itself is *not* copied, is *not* distributed and does *not* travel over the internet to other sites.

Finally, paragraph 2.m of the Pitt declaration provides no comfort.  It reads:

The source file was retrieved by standard methods repeatable by any member of the public and the Court from the website of VeriSmart Software, Inc. on 27 July 2011 as

-13-

MOTION TO DISMISS
POINTS AND AUTHORITIES IN SUPPORT THEREOF

described in the Appendix.  That source file was therefore still present, available and being published by Verismart . . .

Initially, Moving Defendants note that the declaration itself overflows with conclusions of law and expert opinions which may not be considered in determining whether Plaintiff meets his burden.  First, per the resume attached to the FAC, Pitt has decades of experience in software, worked at VSI and knows its systems intimately.  The statement that he used "standard" methods is not properly pleaded fact but rather expert opinion by a purported fact witness, inappropriate for a complaint.  Further, the mere fact that these "methods" are repeatable by any member of the general public is insufficient for the factual assertion that they are generally known to every doctor, nurse, lawyer, judge, bailiff, Sherriff, gardener, cook, truck driver, etc.  Further, being present and available does not violate copyright laws.  Finally, the statement that they are being "published . . . to the general public" is a conclusion of law not suitable for the complaint particularly when the only support seems to be that someone with decades of software programming experience, who wrote the code at issue, and has intimate knowledge of VSI computer systems can access the code using methods that are "repeatable."

### 2.  PLAINTIFF ADMITS THAT PITT HAD A CONTRACT WITH VSI FOR THE TRANSFER OF vCONTENT.  ACCORDINGLY, PLAINTIFF HAS NO CLAIM TO vCONTENT BUT RATHER TO THE CONSIDERATION PROMISED IN EXCHANGE FOR vCONTENT.

The Pitt declaration admits a contract to sell vContent to VSI and a lack of understanding of contract law.

Pitt seems to be under the erroneous conclusion that a contract needs to be in writing to be valid.  In fact, it can generally be evidenced by word, by act, or by a writing.  See California Civil Code §§1619-1621.  The only things needed are offer, acceptance and consideration.  See California Civil Code §§1549-50.  In this particular case, the parties agreed that the Pitt would

transfer his ownership interest in vContent in exchange for certain options of VSI. Pitt manifested his consent by permitting the use of vContent after the parties made their agreement and during the entire period for which he owned it. Further when presented with the agreed upon consideration, the options, he never objected to their form indicating that the consideration was as agreed.

The elements of a contract having been met, VSI has a cause of action against Pitt and now Carson for vContent to be signed over in exchange for issuing the promised options to Pitt. Plaintiff should seek his redress against Pitt, not Defendants.

### 3. THE PLAINTIFF *ADMITS* THAT HE LACKS CLEAN HANDS IN A MANNER WHICH FUNDAMENTALLY ALTERS THE RELATIONSHIP OF THE PARTIES.

In submitting the declaration of Esmond Pitt, Plaintiff admits that Mr. Pitt violated his fiduciary duty to Defendant VSI, that he induced and conspired with Pitt for Pitt to come breach his fiduciary duty and thus does not come to court with clean hands.

### a. DISCUSSION OF THE CLEAN HANDS DOCTRINE.

In *Camp v. Jeffer, Mangels, Butler & Marmaro (1995) 35 Cal.App.4th 620*, the Court discussed the clean hands doctrine:

> The doctrine of clean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." (*Burton v. Sosinsky (1988) 203 Cal.App.3d 562*, 573 [250 Cal.Rptr. 33].) In California, the doctrine of unclean hands may apply to legal as well as equitable claims (*Fibreboard Paper Products Corp. v. East Bay Union of Machinists (1964) 227 Cal.App.2d 675*, 728-729 [39 Cal.Rptr. 64]) and to both tort and contract remedies (*Burton v. Sosinsky, supra, 203 Cal.App.3d at p. 573*; *Blain v. Doctor's Co. (1990) 222 Cal.App.3d 1048 [272 Cal.Rptr. 250]*). fn. 19 . . .

MOTION TO DISMISS
POINTS AND AUTHORITIES IN SUPPORT THEREOF

The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants. . . " (*Fibreboard Paper Products Corp. v. East Bay Union of Machinists, supra, 227 Cal.App.2d at pp. 728-729.*).

### b.   THE COMPLAINT ADMITS THAT PITT BREACHED HIS FIDUCIARY DUTY TO VSI.

The conduct of Pitt defines breach of fiduciary duty of loyalty.  Pitt admits that he acted as Vice President of VSI since 2007 and received options for his services at that time.  Accordingly, he owed a fiduciary duty to the corporation.  *Citicorp Venture Capital, Ltd. v. Committee of Creditors, 160 F.3d 982, 987 (3rd Cir.1998).* He further admits that while Vice President and owing a duty to the corporation, he wrote vContent without disclosing that he was doing so or suggesting that the software would be needed for the proposed business, then installed it at VSI, then, after his theory proved correct, tried to sell it to VSI all while he was already being compensated with options and without getting approval for this before hand.  It appears that he wrote this code exclusively for VSI because no evidence exists that he attempted to commercialize vContent with any third parties.

If that were not enough, while apparently still a Vice President, he turned around and sold vContent to someone he *knew* to be hostile to the corporation, presumably, because its only value was to VSI or someone with a related interest.  And, he fails to disclose the terms of the sale.  California Corporations Code Section 309(a) defines the corporate duty of care as Pitt conducting himself

in a manner such [he] believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.

-16-

MOTION TO DISMISS
POINTS AND AUTHORITIES IN SUPPORT THEREOF

While he might well have sold it to an unrelated third party if VSI could not match that price, selling it to someone he knew was hostile to VSI was an act in violation of his fiduciary duty to VSI.

### c.   IN REGARD TO THE BREACH, THE CONDUCT OF PLAINTIFF WAS TORTIOUS INTERFERENCE.

Depending on whether a contract was completed or in formation, Plaintiff induced the breach or tortuously interfered with the prospective economic advantage of VSI by working with Pitt to violate Pitt's fiduciary responsibility and sell vSim to Plaintiff so that Plaintiff could foment discord.  See *Pacific Gas & Electric Co. v. Bear Stearns & Co. (1990) 50 Cal 3*$^{rd}$ *1118* and *Settimo Associates v. Environ Systems, Inc. (1993) 14 Cal App. 4*$^{th}$ *842*.

### d.   THE SALE OF vCONTENT FUNDAMENTALLY ALTERED THE RELATIONSHIP AMONG THE PARTIES.

The sale of vContent fundamentally altered the relationship between the parties.  By conspiring with Pitt to violate Pitt's fiduciary duties and being successful, Plaintiff tortuously interfered with the relation between VSI and Pitt.  VSI now faces an assault on its technology and a claim by Plaintiff that he owns not just some, but all of the technology which VSI uses.

### C.  THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR COPYRIGHT VIOLATION OF VSIM.

#### 1.  PLAINTIFF FAILS TO PLEAD AND CAN NEVER PLEAD THAT DEFENDANTS EVER VIOLATED THE RIGHTS PROTECTED BY FEDERAL COPYRIGHT LAW WITH RESPECT TO vSIM.

Plaintiff fails to plead and can never plead that Defendants ever violated the rights protected by Federal Copyright law.

Federal copyright law provides only limited protection for a copyrighted work, in particular, it provides protection for the holder the following exclusive rights, described in summary form:

1.  the right to copy;

2.  the right to prepare derivative works;

3.  the right to distribute copyrighted works;

4.  the right to display publicly a copyrighted work whether in visual or audio form.  See 17 U.S.C §106; *Kalantari v. NITV, Inc. 352 F3d 1202, 1207-08 (9th Cir. 2003).*

Here Plaintiff admits that vSim was licensed to VSI so that VSI acquired its copy without violation of copyright law.

Plaintiff alleges uses of the copyrighted material which do not violate federal copyright laws, in particular he says that Defendants "host, use, and offer for sale, products and services which require the infringed software."  Unfortunately for Plaintiff, hosting and using vContent does not violate federal copyright law.  Nor does "marketing" the software.  See 17 U.S.C §106; *Kalantari v. NITV, Inc. 352 F3d 1202, 1207-08 (9th Cir. 2003).*

With regard to the assertion that the products or services "require" vContent, the assertion of the Plaintiff is vague and sidesteps what the parties know but the court does not: vContent works with and processes data at a host location (where it was installed with the consent of the owner) which data is then transmitted over the internet.  The software itself is *not* copied, is *not* distributed and does *not* travel over the internet to other sites.  Moreover, in fact, the software is not marketed for revenue but, rather, is but an internal tool that VSI might use to produce a

MOTION TO DISMISS
POINTS AND AUTHORITIES IN SUPPORT THEREOF

product or a service.

Finally, reverse engineering vSim does not amount to a violation of copyright law because it does not involve copying, distributing or preparing derivative works from vSim.

**2.   PLAINTIFF CAN NEVER PLEAD A CAUSE OF ACTION FOR VIOLATION OF COPYRIGHT LAW BECAUSE VSI HAS A LAWFUL RIGHT TO USE VSIM RESULTING FROM A ROYALTY FREE LICENSE AGREEMENT WHICH PLAINTIFF ADMITS.**

Because the cause of action regarding vSim rests on a claim that VSI breached an agreement to pay certain fees in accordance with the SLA, if the pleadings indicate that VSI owes no fee under the SLA, then the demurrer needs to be sustained without leave to amend.  *The SLA is royalty free.*  See Exhibit G, Section 1.1 which states in pertinent part: the company grants to Licensee an exclusive . . . royalty free . . . license . . . to reproduce, display, perform,. Sublicense, distribute, modify, and prepare derivative works . . ."

**a.    PLAINTIFF ATTEMPTS TO MASK ROYALTIES BY GIVING THEM A DIFFERENT NAME.**

"Royalty is simply a form of cash consideration which is tied to objective, knowable standards. Sometimes the standards are expressed as a percentage of net sales, and sometimes the running royalty is simply based on units produced or sold." *Milgrim on Licensing, §18.06.*

Plaintiff attempts to evade the royalty free nature of the SLA by elevating form over substance and recasting "royalties" as "License Fees."  The License Fee is expressed as 5% of gross revenue, so it meets the definition of "royalty" despite whatever name the Plaintiff gave it because it is a percentage of revenue.  Further, the $100,000 "Minimum License Fee" is a minimum royalty.  VSI is obligated to pay in excess of that amount if royalties due exceed that amount in any year.  The Transfer Fee is a limit on total royalties as it addresses when royalty payments end.

Because the various license fees all revolve around a percentage of revenues, they are royalties, no matter what name Plaintiff gave them.  Thus, these conflict with the royalty free nature of the SLA.  Accordingly, Plaintiff can maintain no cause of action based on non payment of royalties because none were due and the demurrer needs to be sustained without leave to amend.

### 3. PLAINTIFF CAN NEVER ESTABLISH A COPYRIGHT VIOLATION WITH REGARD TO vSIM BECAUSE UNDER THE SLA, THE LICENSE REMAINS INTACT, EVEN IN THE EVENT OF A BREACH.

Plaintiff can never establish a copyright violation for vSim because termination of the SLA for breach of its payment terms does not terminate the license granted to VSI.  In particular, termination for breach terminates the exclusivity provisions of the SLA but puts no restrictions on the ability of VSI to use vSim.  In particular, the terms of Section 7.4 Effect of Termination, provides as follows:

> as a remedy for exclusivity provided to licensee [VSI] by Company [OLLC], and lost opportunity related thereto, Company shall have the worldwide, royalty-free, assignable, perpetual and irrevocable right and license to use, execute, reproduce, display, perform, sublicense, and modify . . .

Further, Section 7.5 reiterates the granting of this license to licensor as the penalty for non payment.

Plaintiff is bound by the contract that he plead and can never prevent VSI from using the software at issue.

---

MOTION TO DISMISS
POINTS AND AUTHORITIES IN SUPPORT THEREOF

**4.  PLAINTIFF LACKS STANDING TO ASSERT A CLAIM AGAINST DEFENDANTS BASED UPON BREACH OF THE SLA.**

Plaintiff lacks standing to assert a claim for vSim here because under the SLA, he lacked the authority to assign the SLA and claim his status as Plaintiff so that he does not hold the copyright.  The SLA only permits a single assignment by OLLC in cases of *necessity* while Plaintiff admits the assignment was for *convenience*.  He further admits this assignment took place in 2006, *five years before OLLC needed to commence this action*.  The SLA Section 8.6 permits assignment **only** if OLCC was "unable or incapable" of performing its duties.  Plaintiff admits that he assigned the SLA to himself "as a simplification of the administration of the SLA, since Plaintiff owned both companies in their entirety."  Pleading breach of the SLA by Plaintiff which defeats standing means Plaintiff can never overcome this failing.

**B.  THE ALLEGATIONS AGAINST THE INDIVIDUAL DEFENDANTS ARE TOO VAGUE AND CONCLUSORY TO FORM A CAUSE OF ACTION AGAINST THEM.**

The allegations against the individual defendants are too vague and conclusory to form a cause of action against them.  At its most basic, the FAC fails to describe the positions and responsibilities of any Defendant in connection with VSI.

In particular, Plaintiff makes generic allegations against all individual Defendants.  Many are similar for each cause of action.  In particular:

1.  Defendant Versimart Software, Inc. (as an alter ego of Phillip Thoren) . . .  See FAC ¶¶8g; 9.e.

The assertion of alter ego defines a conclusory allegation.  The complaint fails as to that basis of personal liability because nowhere in the complaint does the Plaintiff make a factual allegation which supports an alter ego conclusion.

2.  Defendants refused to acknowledge the termination and continue to use the  . . . software. See FAC ¶¶8f; 9.d.

In this regard, Plaintiff fails to specify any individual actions by any specific individual Defendant which amounts to use of the software at issue.  Without more, the complaint fails to establish personal liability of any Defendant because it fails to assert any facts to establish what role any individual Defendant played in refusing to acknowledge the termination or in continuing to use the software.

3.   Defendants "willfully, intentionally, and knowingly continue to host, use, and offer for sale, products and services which require the infringed software. . ."  FAC ¶¶8h;9f and 10f.

In this regard, Plaintiff fails to specify any individual actions by any specific individual Defendant which amount to the alleged conduct or mental state.  Without more, no individual Defendant can know what creates the mental state allegations or what part they played in the alleged conduct.

4.  . . . Plaintiff has independently verifiable evidence that Defendants  . . . are in the process of using the copyrighted trade secrets of Plaintiff.  See FAC ¶¶8.j

Now this gets egregious.  Not only does Plaintiff fail to assert any specific facts with regard to any individual Defendant, he claims to have evidence pursuant to which he could plead such facts and chooses not to.

5.  Defendants . . . taken further steps to gain access to illegally obtained copies . . .

In addition to being conclusory, this allegation yet again fails to identify a single "step" taken by any individual Defendant.

## V.  CONCLUSION

The Complaint fails to state a claim upon which relief can be granted.  Among other things, it fails to indicate any fact that any Defendant invaded any of the alleged rights by Plaintiff purportedly protected by federal copyright law with regard to each piece of software.  To the contrary, Plaintiff only alleges uses of all code which do not violate copyright law.

### A.  CognitiveLogic

With regard to CognitiveLogic, Plaintiff admits that Defendants do not even possess a copy. His controlling exhibit also fails to support his claim that CognitiveLogic is subject to copyright protection.  He does not and cannot plead that Defendants copied CognitiveLogic.

### B.  vContent

With regard to vContent, Pitt admits that he had a contract with VSI for the sale of the software to VSI.  Accordingly, the remedy of the Plaintiff is for payment of the agreed upon consideration, not damages for copyright infringement.   Plaintiff lacks clean hands necessary to assert this claim.  He conspired with and induced a breach of fiduciary duty with Pitt, thereby tortiously interefering with the rights of VSI in the agreement, and, if no agreement existed, with prospective economic advantage.

## C. vSim

With regard to vSim, the license is royalty free so that VSI never breached the agreement and remains entitled to use vSim in any way it sees fit.  Even if it did breach the agreement, the agreement expressly permits VSI the right to continue using that code in the event of a breach.  If he establishes the breach in a state court action, Plaintiff has the right to a non exclusive license to it.

## D. Individual Defendants.

The allegations against the individual defendants are too vague and conclusory to constitute a properly plead cause of action.

## E. Final

For the foregoing reasons, the complaint the motion should be granted without leave to amend.

Respectfully submitted,

Dated:  January 5, 2012

My General Counsel Group

/s/ Michael W. Prozan
_____

Michael W. Prozan

Attorney for Defendants
VERISMART SOFTWARE, INC., PHILLIP THOREN, JAMES GARVEY, ANDY THOREN, and JOE DAWSON,

1

# TABLE OF CONTENTS

2   I.   INTRODUCTION ...................................................................................................3

3   II.   FACTS ...................................................................................................................3

4   A.   GENERAL BACKGROUND ..........................................................................3

5   B.   COMPLAINT OVERVIEW ...........................................................................4

6   C.   COGNITIVELOGIC ALLEGATIONS ............................................................4

7   D.   vSIM ALLEGATIONS ................................................................................7

8   III.   LAW .....................................................................................................................8

9   IV.   ARGUMENT ...........................................................................................................9

10   A.   BECAUSE OF HIS INCONSISENT PLEADINGS, PLAINTIFF CAN NEVER ESTABLISH A VIOLATION OF COPYRIGHT

11   LAW BY DEFENDANTS AS TO COGNITIVELOGIC. ........................................................9

12   1.   PLAINTIFF PLEADS THAT DEFENDANTS LACK POSSESSION OF COGNITIVELOGIC AND, THEREFORE, CANNOT

13   BE INFRINGING HIS COPYRIGHT. ...........................................................9

14   2.   PLAINTIFF ADMITS THAT HIS CLAIM DOES NOT FALL WITHIN THE OWNERSHIP STRUCTURE OF THE

15   SOFTWARE ...................................................................................... 10

16   3.   PLAINTIFF DOES NOT PLEAD AND BECAUSE OF CLAIMS IN THE FAC CAN NEVER PLEAD THAT VSI COPIED

17   THE COGNITIVELOGIC SOFTWARE. ........................................................ 10

18   4.   PLAINTIFF FAILS TO PLEAD AND CAN NEVER PLEAD THAT DEFENDANTS EVER VIOLATED THE RIGHTS

19   PROTECTED BY FEDERAL COPYRIGHT LAW WITH RESPECT TO COGNITIVELOGIC AND ACTUALLY ALLEGES USES NOT

20   PROHIBITED BY FEDERAL COPYRIGHT LAW. ........................................................ 11

21   B.   PLAINTIFF CAN NEVER ESTABLISH A VIOLATION OF COPYRIGHT LAW BY DEFENDANTS AS TO vCONTENT. ... 12

22   1.   PLAINTIFF FAILS TO PLEAD AND CAN NEVER PLEAD THAT DEFENDANTS EVER VIOLATED THE RIGHTS

23   PROTECTED BY FEDERAL COPYRIGHT LAW WITH RESPECT TO vCONTENT. ................................. 12

24   2.   PLAINTIFF ADMITS THAT PITT HAD A CONTRACT WITH VSI FOR THE TRANSFER OF vCONTENT.

25   ACCORDINGLY, PLAINTIFF HAS NO CLAIM TO vCONTENT BUT RATHER TO THE CONSIDERATION PROMISED IN

EXCHANGE FOR vCONTENT. ................................................................ 14

CV 11 3766 LB

MOTION TO DISMISS
AND POINTS AND AUTHORITIES

-i-

Motion

3.      THE PLAINTIFF ADMITS THAT HE LACKS CLEAN HANDS IN A MANNER WHICH FUNDAMENTALLY ALTERS THE RELATIONSHIP OF THE PARTIES.................................................................................. 15

C.      THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR COPYRIGHT VIOLATION OF VSIM. ....................... 17

1.      PLAINTIFF FAILS TO PLEAD AND CAN NEVER PLEAD THAT DEFENDANTS EVER VIOLATED THE RIGHTS PROTECTED BY FEDERAL COPYRIGHT LAW WITH RESPECT TO vSIM. ................................. 17

2.      PLAINTIFF CAN NEVER PLEAD A CAUSE OF ACTION FOR VIOLATION OF COPYRIGHT LAW BECAUSE VSI HAS A LAWFUL RIGHT TO USE vSIM RESULTING FROM A ROYALTY FREE LICENSE AGREEMENT WHICH PLAINTIFF ADMITS. 19

3.      PLAINTIFF CAN NEVER ESTABLISH A COPYRIGHT VIOLATION WITH REGARD TO vSIM BECAUSE UNDER THE SLA, THE LICENSE REMAINS INTACT, EVEN IN THE EVENT OF A BREACH. ................................. 20

4.      PLAINTIFF LACKS STANDING TO ASSERT A CLAIM AGAINST DEFENDANTS BASED UPON BREACH OF THE SLA. 21

B.      THE ALLEGATIONS AGAINST THE INDIVIDUAL DEFENDANTS ARE TOO VAGUE AND CONCLUSORY TO FORM A CAUSE OF ACTION AGAINST THEM. ................................. 21

V.   CONCLUSION ................................................................................. 23

A.      COGNITIVELOGIC ................................................................ 23

B.      vCONTENT ................................................................ 23

C.      vSIM ................................................................ 24

D.      INDIVIDUAL DEFENDANTS. ................................................................ 24

E.      FINAL ................................................................ 24

1

2

3

# TABLE OF AUTHORITIES

4

**Cases**

5

*Ashcroft v. Iqbal 556 U.S. 662, 129 S.Ct. 1937 (2009)* ........................................................7

6

*Bell Atlantic Corp v. Twombly (2007) 550 US 544, 127 S.Ct. 1955* ...................................7

7

*Bissessure v. Indiana Univ. Bd of Trustees (7th Cir. 2009) 581 F3d 599, 603* ...................7

8

*Blain v. Doctor's Co. (1990) 222 Cal.App.3d 1048 [272 Cal.Rptr. 250])* ......................... 14

9

Burton v. Sosinsky (1988) 203 Cal.App.3d 562, 573 [250 Cal.Rptr. 33 ............................. 14

10

*Camp v. Jeffer, Mangels, Butler & Marmaro (1995) 35 Cal.App.4th 620*.......................... 14

11

*De La Cruz v. Tormey (9th Cir. 1978) 582 F.2d 45* ..............................................................7

12

Fibreboard Paper Products Corp. v. East Bay Union of Machinists (1964) 227 Cal.App.2d 675, 728-729 ............... 14

13

*Fibreboard Paper Products Corp. v. East Bay Union of Machinists, supra, 227 Cal.App.2d at pp. 728-729*............ 14

14

*Kalantari v. NITV, Inc. 352 F3d 1202, 1207-08 (9th Cir. 2003)*....................................9, 11, 16

15

*MGIC Indem. Corp. v. Weisman (9th Cir 1986) 803 F2d 500, 504* .....................................8

16

*Pacific Gas & Electric Co. v. Bear Stearns & Co. (1990) 50 Cal 3rd 1118* ...................... 15

17

*Rescuecom Corp. v. Google, Inc. (2nd Cir. 2009) 562 F3d. 123* .........................................7

18

*Settimo Associates v. Environ Systems, Inc. (1993) 14 Cal App. 4th 842* ......................... 15

19

*Thompson v. Illinois Dept of Prof Reg. (7th Cir. 2002) 300 F3d 750, 754*...........................8

20

*Three Boys Music Corporation v. Bolton et al. 277 F.3d 477 (2000)* ...................................9

21

**Statutes**

22

17 U.S.C §106 ...................................................................................................................... 16

23

California Civil Code §§1549-50 .......................................................................................... 13

24

California Civil Code §§1619-1621 ...................................................................................... 13

25

CV 11 3766 LB
## MOTION TO DISMISS
## AND POINTS AND AUTHORITIES
### -iii-

**Rules**

FRCP 12(b)6............................................................................................................................7

*FRCP 8*..................................................................................................................................7

**Treatises**

*Milgrim on Licensing, §18.06*..............................................................................................17

CV 11 3766 LB

MOTION TO DISMISS
AND POINTS AND AUTHORITIES
-iv-

Motion